## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Andrew Marston, individually,
and on behalf of all others similarly
situated,

               Plaintiff,

    v.

Eisner Advisory Group, LLC,

               Defendant.

Case No.: 0:25-cv-1568

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

---

Plaintiff Andrew Marston (Plaintiff") individually and on behalf of all others similarly situated (the "Class" or "Class Members"), brings this Class Action Complaint against Defendant Eisner Advisory Group, LLC ("Defendant" or "Eisner"). The allegations set forth in this Complaint are based on the personal knowledge of the Plaintiff and upon information and belief and further investigation of counsel.

## I.    <u>INTRODUCTION</u>

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard sensitive information of its clients.

2.    Eisner Advisory Group, part of EisnerAmper, a global business consulting firm, is an alternative practice structure that provides business advisory and non-attest services to businesses across a wide range of industries.[1] EisnerAmpers' combined entities include more than 450 partners and 4,500 employees.

---

[1] https://www.linkedin.com/company/eisneramper/about/ (last visited April 16, 2025)

3.      Eisner Advisory Group and its subsidiary entities provide tax and business consulting services to their clients.[2]

4.      As part of its financial services, Eisner collects, maintains, and stores highly sensitive personal and private information belonging to its clients, including, but not limited to: Social Security numbers, full names, driver's license or state identification information, financial account information, dates of birth (collectively, "personally identifying information" or "PII"), health insurance information, and medical information (collectively, "protected health information" or "PHI"; with PII, collectively, "Private Information").[3]

5.      Between September 4 and September 9, 2023 Eisner experienced a data breach incident (the "Data Breach") in which an unauthorized third-party accessed its network environment. Subsequently, Eisner determined that the unauthorized third-party was able to remove Private Information from its network. Upon information and belief, over 84,795 people were affected by the Data Breach.

6.      On April 8, 2025, years after the Data Breach, Eisner issued data breach notices to individuals whose information was believed to have been accessed in this incident, including Plaintiff's and Class members' Private Information.

---

[2] https://www.eisneramper.com/about-us/

[3] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/602a61a2-18b4-4e62-be78-93cfe3ef3653.html

7.      Plaintiff and Class members provided their Private Information to Eisner, either indirectly or directly, with the understanding that their information would be secure and protected.

8.      As Eisner stored and handled such highly sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

9.      Ultimately, Eisner failed to fulfill these obligations as an unauthorized third-party breached Eisner's information systems and databases and accessed Plaintiff's and Class members' Private Information. The Data Breach and the exfiltration of Plaintiff's and Class members' Private Information were direct, proximate, and foreseeable results of multiple data security failings on the part of Eisner.

10.     The Data Breach occurred because Eisner inexcusably failed to implement reasonable data security protections to safeguard its information systems and databases. Prior to the Data Breach, Eisner failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been made aware of this fact, they would have never provided their Private Information to Eisner.

11.     Eisner's meager attempt to ameliorate the effects of the Data Breach with *one year* of complimentary credit monitoring is woefully inadequate. Much of the Private Information that was stolen is immutable and one year of credit monitoring is nothing in the face of a life-long heightened risk of identity theft.

12.    As a result of Eisner's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its statutory, and common-law obligations, Plaintiff and Class members suffered injuries including, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to change usernames and passwords on their accounts;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and the continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

13.    Accordingly, Plaintiff brings this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiff's and Class members' Private Information; its failure to reasonably provide timely notification that Plaintiff's and Class members' Private Information had been compromised by an unauthorized third party; and for intentionally and unconsciously deceiving Plaintiff and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.    PARTIES

14.    Plaintiff Andrew Marston is, and at all relevant times herein was, an individual citizen of the State of Minnesota, residing in Edina. Plaintiff received a data breach notice letter dated April 8, 2025, informing him that his Private Information, such as his name and Social Security number had been impacted by the Data Breach.

15.    Defendant Eisner Advisory Group, LLC is a financial service organization part of EisnerAmper, a global business consulting firm with offices worldwide. Eisner Advisory Group LLC is located at 2501 S. Wayzata Blvd, Minneapolis MN 55405.

## III.    JURISDICTION AND VENUE

16.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant.

17.    This Court has personal jurisdiction over Defendant because Defendant is a resident of Minnesota, conducts business in this District, and the acts and omissions giving rise to the claims alleged herein occurred in and emanated from this District.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Eisner resides in this District and is being served in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Eisner – Background

19.    Eisner is a tax and business consulting organization providing advisory and non-attest services to business across a wide range of industries.

20.    As part of its operations, Defendant collects, maintains, and stores the highly sensitive Private Information provided by its current and former clients, including but not limited to: Social Security numbers, full names, addresses, driver's license numbers or other state issued identification numbers, passport numbers, financial information, health insurance information, and medical information.

21.    Defendant was subject to statutory requirements for disclosure of the breach under Minn. Stat. § 13.055, subd. 2.

22.    On information and belief, Eisner had failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in a third party's unauthorized access of the Private Information of Eisner's current and former clients—Plaintiff and Class members.

23.    Individuals such as Plaintiff entrusted their Private Information to Eisner with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. And, in the event of any unauthorized access, that Eisner would provide them with prompt and accurate notice.

24.     This expectation was objectively reasonable and based on an obligation imposed on Eisner by statute, regulations, industrial custom, and standards of general due care.

25.     Unfortunately for Plaintiff and Class members, Eisner failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiff and Class members from having their Private Information accessed during the Data Breach.

**B.      The Data Breach**

26.     According to the Notice of Data Breach provided by Defendant, on or about September 9, 2023, Eisner discovered unauthorized access to its computer network environment. Eisner launched an investigation into the nature and scope of the incident and determined that there was unauthorized access to the information between September 4, 2023 and September 9 2023. Eisner conducted a review of the files and completed the review years later on February 13, 2025.

27.     On April 8, 2025—*nineteen months* after Eisner discovered the Data Breach—Eisner sent notices to individuals affected by the Data Breach.

28.     Defendant did not promptly and properly notify Plaintiff and Class members as required by Minn. Stat. § 13.055, subd. 2.

**C.      Eisner's Many Failures Both Prior to and Following the Breach**

29.     Defendant collects and maintains Private Information belonging to Plaintiff and Class members as part of its normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

30.     Defendant failed to implement reasonable security protections to safeguard its information systems and databases.

31.     Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

32.     Defendant did not inform Plaintiff and Class members that their information was stolen until nineteen months—over *a year and a half*—after it first discovered the Data Breach. This delay in informing victims virtually ensured that the unauthorized parties who accessed this Private Information could monetize, misuse and/or disseminate that Private Information before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the imminent, substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

33.     Defendant's attempt to ameliorate the effects of this Data Breach with one year of complimentary credit monitoring is inadequate. Plaintiff's and Class members' Private Information was accessed and acquired by an unauthorized party. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the accessed Private Information is immutable.

34.     Defendant's myriad failures, including the failure to timely notify Plaintiff and Class members that their personal and financial information had been accessed without permission due to Defendant's security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information for more than nineteen months before Defendant finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.     Data Breaches Pose Significant and Imminent Threats**

35.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, Social Security numbers in particular, are an invaluable commodity and a frequent target of hackers.

36.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[4]

37.     In fact, according to the cybersecurity firm PurpleSec, ransomware attacks against small governmental entities and municipalities were a major focus of ransomware

---

[4] *FBI, Secret Service Warn of Targeted*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last accessed May 16, 2024).

attacks, with 45% of such attacks being against communities of fewer than 50,000 residents.[5]

38.     Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[6]

39.     Stolen PII is routinely traded on dark web black markets as simple commodity, with Social Security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[7]

40.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment

---

[5] PurpleSec, *Cyber Security Statistics the Ultimate List of Stats Data, & Trends For 2023* https://purplesec.us/resources/cyber-security-statistics/#Ransomware (last accessed May 16, 2024)
[6] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/.
[7] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/.

for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[8]

41.    This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused, and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[9]

42.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of its obligation to safeguard former and current employee and client information.[10]

---

[8] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.
[9] *Id.*
[10] *See e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

43.     Given the nature of Defendant's Data Breach, as well as the long delay in notification to the Class, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the unauthorized parties who possess Plaintiff's and Class members' Private Information can easily obtain Plaintiff's and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

44.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[11] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

45.     To date, Defendant has offered Plaintiff and Class members only one year of identity theft monitoring services. The offered services are inadequate to protect Plaintiff and the Class from the threats they will face for years to come, particularly in light of the Private Information at issue here.

46.     Despite the prevalence of public announcements of data breach and data security compromises, its statutory requirements, its own acknowledgment of the risks

_____

[11] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and the Class from misappropriation. As a result, the injuries to Plaintiff and the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures.

**E.    Eisner Had a Duty and Obligation to Protect Private Information**

47.    Defendant has an obligation to protect the Private Information belonging to Plaintiff and Class members. First, this obligation was mandated by government regulations and state laws, including FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive Private Information and employment records. Plaintiff and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.    FTC Act Requirements and Violations**

48.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

49.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[12] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[13] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[14]

50.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

51.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential

---

[12] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[13] *Id.*
[14] *Id.*

consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

52.     Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

53.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

54.     Defendant was fully aware of its obligation to protect the Private Information of its current and former clients including Plaintiff and the Class, and on information and belief, Defendant is a sophisticated and technologically savvy entity that relies extensively on technology systems and networks to maintain its practice, including storing its clients' PII, private information, and other uniquely identifying information in order to operate its business.  Maintaining data is its business and principal reason for being.

55.     Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiff and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiff's and Class members' Private Information.

2.    **Industry Standards and Noncompliance**

56.    As noted above, experts studying cybersecurity routinely identify businesses and smaller municipalities as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

57.    Some industry best practices that should be implemented by businesses dealing with sensitive Private Information like Defendant include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

58.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

59.    Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

60.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

61.     Further, Defendant delayed over a year and a half between discovering the breach and issuing notice. This delay was beyond what is reasonable acceptable or statutorily mandated.

**F.      Plaintiff and the Class Suffered Harm Resulting from the Data Breach**

62.     Like any data hack, the Data Breach presents major problems for all affected.[15]

63.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[16]

64.     The ramifications of Defendant's failure to properly secure Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

---

[15] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.
[16]*Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

65.    According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

66.    Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

67.    Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[17] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[18]

68.    There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

---

[17] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.
[18] *Id.*

69.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[19] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[20]

70.     In response to the Data Breach, Defendant offered to provide certain individuals whose Private Information was exposed in the Data Breach with just one year of credit monitoring through IDX. However, this is much shorter than what is necessary to protect against the lifelong risk of harm imposed on Plaintiff and Class members by Defendant's failures.

71.     Moreover, the credit monitoring offered by Defendant is fundamentally inadequate to protect them from the injuries resulting from the unauthorized access and exfiltration of their sensitive Private Information.

72.     Here, due to the Breach, Plaintiff and Class members have been exposed to injuries that include, but are not limited to:

    a.    Theft of Private Information;

    b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

    c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

---

[19] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.

[20] *Id.*

d.      Costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e.      The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.      The loss of Plaintiff's and Class members' privacy.

73.    Plaintiff and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within a couple of years: the unauthorized access of Plaintiff's and Class members' Private Information, especially their Social Security numbers, puts Plaintiff and the Class at risk of identity theft indefinitely, and well beyond the limited period of credit monitoring that Defendant offered victims of the Breach.

74.    As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiff and Class members have been placed at a substantial risk of harm in the form of identity theft, and have incurred and will incur actual damages in an attempt to prevent identity theft.

75.    Plaintiff retains an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G.    PLAINTIFFS SPECIFIC EXPERIENCES

### Plaintiff Andrew Marston

76.    Plaintiff Andrew Marston's Private Information was in the custody of Defendant at the time of the Data Breach.

77.    Plaintiff Marston became aware of the Data Breach through the notice Defendant mailed to him. He learned that information such as full names and Social Security numbers, were compromised in the Data Breach.

78.    As a result of the Data Breach and the resulting suspicious activity, Plaintiff Marston has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. He has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

79.    As a result of the Data Breach, Plaintiff Marston has suffered anxiety due to the public dissemination of his Private Information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his private information for purposes of identity theft and

fraud. Plaintiff Marston is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

80.    Plaintiff Marston suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

81.    As a result of the Data Breach, Plaintiff Marston anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.    CLASS REPRESENTATION ALLEGATIONS

82.    Plaintiff brings this action on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

83.    In the alternative, Plaintiff brings this action on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All persons who are residents of the State of Minnesota whose Private Information was accessed in the Data Breach (the "Minnesota Subclass").

Excluded from the Subclass are Defendant, its executives and officers, and the Judge(s) assigned to this case.

84. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, upon information and belief tens of thousands of individuals comprise the Class.[21] The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

85. **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.    when Defendant learned of the Data Breach;

    b.    whether hackers obtained Class members' Private Information via the Data Breach;

    c.    whether Defendant's response to the Data Breach was adequate;

---

[21] According to the Office of the Maine Attorney General, Defendant reported that 84,795 individuals were affected by the Data Breach. *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/602a61a2-18b4-4e62-be78-93cfe3ef3653.html

d.    whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.    whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations, industry standards, and/or its own promises and representations;

f.    whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

g.    whether Defendant owed a duty to Class members to safeguard their Private Information;

h.    whether Defendant breached its duty to Class members to safeguard their Private Information;

i.    whether Defendant unlawfully maintained, lost, or disclosed Plaintiff's and Class members' Private Information;

j.    whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

k.    whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

l.    whether Defendant violated Minn. Stat. § 13.055;

m.    whether Defendant's conduct was negligent;

n.    whether Defendant's conduct was *per se* negligent;

o.    whether Defendant was unjustly enriched;

p.    what damages Plaintiff and Class members suffered as a result of Defendant's misconduct;

q.    whether Plaintiff and Class members are entitled to actual and/or statutory damages; and

r.    whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

86.    **Typicality**: All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiff is entitled to is typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

87.    **Adequacy**: Plaintiff is an adequate class representative because his interests do not materially or irreconcilably conflict with the interests of the Class he seeks to represent, he has counsel competent and highly experienced in complex class action litigation and intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor his counsel have any interests that are antagonistic to the interests of other members of the Class.

88.    **Superiority**: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is the most superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized

litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

### VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

89.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

90.    Defendant owes a duty of care to protect the Private Information belonging to Plaintiff and Class members. Defendant also owes several specific duties including, but not limited to, the duty:

  a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

  b.    to protect clients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

  c.    to have procedures in place to detect the loss or unauthorized dissemination of Private Information in its possession;

  d.    to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members;

  e.    to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

      f.     to promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

91.     Defendant also owes this duty because industry standards mandate that Defendant protect confidential Private Information.

92.     Defendant also owes this duty because it had a special relationship with Plaintiff and Class members. Plaintiff and Class members entrusted their Private Information to Defendant on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendant had the ability to protect its systems and the Private Information stored on them from attack.

93.     Defendant also owes a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiff and the Class. This duty exists to allow Plaintiff and the Class the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

94.     Defendant breached its duties to Plaintiff and the Class by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard the Private Information belonging to Plaintiff and Class members.

95.     Defendant also breached the duties it owed to Plaintiff and the Class by failing to timely and accurately disclose to Plaintiff and Class members that their Private Information had been improperly acquired and/or accessed.

96.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class were damaged. These damages include, and are not limited to:

- lost or diminished value of their Private Information;

- out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- permanent increased risk of identity theft.

97.     Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

98.     In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiff and Class members.

99.     Plaintiff is entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT II
## NEGLIGENCE *PER SE*

100.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

101.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by

the FTC, the unfair act or practice by companies, such as Defendant, of failing to use reasonable measures to protect PII and/or PHI. Various FTC publications and orders also form the basis of Defendant's duty. Section 5 of the FTCA imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class members.

102.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 requires Defendant to use reasonable measures to protect confidential data.

103.    Defendant violated the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class members' Private Information.

104.    Under Minn. Stat. 325E.61 subdivision 1, "any person or business that conducts business in the state, and that owns or licenses data that includes personal information, shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of the state whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure must be made in the most expedient time possible and without unreasonable delay . . . " Minn. Stat. 325E.61, subd. 1.

105.    The Data Breach led to the unauthorized access of Plaintiff's and Class Members' sensitive Private Information. Defendant waited over a year and a half to notify Plaintiff and Class Members that it had discovered the Data Breach, and that the Data Brach impacted their Private Information, including their Social Security numbers. Delaying over

a year and a half to provide individual notice is an unreasonable delay in violation of Minn. Stat. § 325E.61 subdivision 1.

106.    Defendant's failure to comply with and the FTCA and the Minnesota data breach notification law constitutes negligence *per se*.

107.    Plaintiff and Class members are within the class of persons that the FTCA and the Minnesota data breach notification law were intended to protect.

108.    It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

109.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

110.    Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT III
## BREACH OF IMPLIED CONTRACT

111.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

112.    Plaintiff and Class members entered into implied contracts with Defendant with respect to the Private Information exchanged when they provided their Private Information to Defendant for services.

113.    Defendant received benefits from clients providing their Private Information. In exchange, Defendant agreed to, and Plaintiff understood that Defendant would, among other things: (1) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Private Information; and (2) protect Plaintiff's and Class members' Private Information in compliance with federal and state laws, regulations, and industry standards.

114.    Protection of Plaintiff's and Class members' Private Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Defendant on the other and Plaintiff and Class members would not have acted in the same manner to Defendant had they known Defendant would not adequately secure Plaintiff's and Class members' Private Information.

115.    Had Plaintiff and Class Members known that Defendant would not adequately protect their Private Information, they would either not have entrusted their Private Information to Defendant, or alternatively would have taken further steps with

Defendant to ensure the safety, security, and confidentiality of the Private Information they entrusted with Defendant.

116.    Plaintiff and Class members performed their obligations under the implied contract when they provided Defendant with their Private Information and/or paid for services from Defendant.

117.    Defendant breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their Private Information and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' Private Information in a manner that complies with applicable laws, regulations, and industry standards.

118.    Defendant's breach of its implied contract with the Plaintiff and Class members directly resulted in the Data Breach and the injuries Plaintiff and Class members have suffered from the Data Breach.

119.    Plaintiff's and Class members' injuries include: (1) facing a substantially increased risk of identity theft; (2) their Private Information was improperly disclosed to unauthorized individuals; (3) the confidentiality of their Private Information has been breached; (4) they lost time and money to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## COUNT IV
## UNJUST ENRICHMENT

120.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein, except for Count III – Breach of Implied Contract.

121.    This count is brought in the alternative to Count III – Breach of Implied Contract.

122.    Plaintiff and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendant.

123.    Defendant was benefitted by the conferral upon it of Plaintiff's and Class members' Private Information and by its ability to retain and use that information. Defendant understood that it was in fact so benefitted.

124.    Defendant also understood and appreciated that Plaintiff's and Class members' Private Information was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

125.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, Plaintiff and Class members would not have provided or authorized their Private Information to be provided to Defendant, and Defendant would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that its data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining customers, gaining the reputational advantages conferred upon it by Plaintiff and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure

to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

126.    As a result of Defendant's wrongful conduct as alleged herein (including, among other things, its deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; its failure to employ adequate data security measures; its continued maintenance and use of the Private Information belonging to Plaintiff and Class members without having adequate data security measures; and its other conduct facilitating the theft of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

127.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

128.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and the Class in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

129.    The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

130.    Defendant is therefore liable to Plaintiff and the Class for restitution in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically the value to Defendant of the PII and private information that was accessed in the Data Breach and the profits Defendant receives from the use and sale of that information.

131.    Plaintiff and Class members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

132.    Plaintiff and Class members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V
## INVASION OF PRIVACY

133.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

134.    Plaintiff and Class members had a reasonable expectation of privacy in the Private Information that Defendant possessed and/or continues to possess.

135.    By failing to keep Plaintiff's and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's and Class members' privacy by:

      a.    intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

      b.     publicizing private facts about Plaintiff and Class members, which is highly offensive to a reasonable person.

136.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider Defendant's actions highly offensive.

137.    Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

138.    As a proximate result of such misuse and disclosures, Plaintiff's and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

139.    In failing to protect Plaintiff's and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiff's and Class members rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its thousands of clients. Plaintiff, therefore, seeks an award of damages, including punitive damages, on behalf of Plaintiff and the Class.

<u>**COUNT VI**</u>
**DECLARATORY JUDGMENT**

140.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

141.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*. and Minn. Stat. §§ 555.01, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

142.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class members' Personal Information and whether Defendant currently maintain data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their Personal Information.

143.    Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff and Class members will continue to suffer injury as a result of the compromise of their Personal Information and remain at imminent risk that further compromises of their Personal Information will occur in the future.

144.    That risk stems from Defendant's retention of Plaintiff's Personal Information, and its continued collection and aggregation of new medical information in the normal course of business. Defendant thus will continue to receive new and additional medical information concerning Plaintiff and the Class and, consequently, Plaintiff and the Class remain at substantial risk of a subsequent breach resulting in the theft of Personal Information.

145.    Pursuant to its authority under the Minnesota Declaratory Judgment Act, this Court should enter a judgment declaring, among other things: (i) Defendant continues to

owe a legal duty to secure Plaintiff's and Class Members Personal Information and to timely notify Plaintiff and Class Members of a data breach; and (ii) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff's and Class Members' Personal Information.

146.    The Court should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Plaintiff's and Class members' Personal Information.

147.    If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach. The risk of another data breach is real, immediate, and substantial. If another breach occurs, Plaintiff and Class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

148.    The hardship to Plaintiff and Class Members, if an injunction does not issue, exceeds the hardship to Defendant if an injunction is issued. Among other things, if another Data Breach occurs through Defendant, Plaintiff and Class Members will likely be subject to fraud, identity theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

149.    Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing another

data breach of Defendant's systems, thus eliminating the additional injuries that would result to Plaintiff and the Class whose Personal Information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.   that the Court certify this action as a class action, proper and maintainable pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3); declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B.   that Plaintiff be granted the declaratory relief sought herein;

C.   that the Court award Plaintiff and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

D.   that the Court award Plaintiff and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

E.   that the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

F.   that the Court award pre- and post-judgment interest at the maximum legal rate;

G.   that the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

H.   that the Court grant all other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the putative Class, demand a trial by jury on all issues so triable.

Date: April 16, 2025                    Respectfully Submitted,

                                        */s/ Bryan L. Bleichner*
                                        Bryan L. Bleichner (MN #0326689)
                                        Philip Krzeski (MN #0403291)
                                        **CHESTNUT CAMBRONNE PLLC**
                                        100 Washington Ave. S., Suite 1700
                                        Minneapolis, MN 55401
                                        Telephone: (612) 339-7300
                                        *bbleichner@chestnutcambronne.com*
                                        *pkrzeski@chestnutcambronne.com*

                                        ***Attorneys for Plaintiff and Putative Class***